

JAN 2 0 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**1:06CV0151**

| | |
|---|---|
| OHIO SAVINGS BANK, <br> d/b/a AMTRUST BANK <br> 1801 East Ninth Street <br> Cleveland, Ohio 44114, | ) CASE NO. <br> ) <br> ) JUDGE **JUDGE GWIN** <br> ) |
| Plaintiff, | ) <br> ) **COMPLAINT** <br> ) |
| v. | ) <br> ) **(Jury Demand Endorsed Hereon)** |
| AMTRUST MORTGAGE CORPORATION <br> 100 Glenridge Point Pkwy., #400 <br> Atlanta, Georgia 30342, | ) <br> ) <br> ) **MAG. JUDGE LIMBERT** <br> ) |
| Defendant. | ) |

Plaintiff Ohio Savings Bank, d/b/a AmTrust Bank ("OSB"), by and through counsel,

states as follows for its Complaint against Defendant Amtrust Mortgage Corporation ("AMC"):

### JURISDICTION AND VENUE

1.     OSB is a federally-chartered savings bank, with its principal place of business at

1801 East Ninth Street, Cleveland, Ohio 44114.

2.     AMC is a Georgia corporation with its principal place of business at 100

Glenridge Point Pkwy., #400, Atlanta, Georgia 30342.  Upon information and belief, AMC is

licensed to or does provide residential mortgage lending services in 24 states, including Ohio.

3.      This Court has jurisdiction over the Complaint under 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a) and (b) as this case arises under the Trademark Laws of the United States, 15 U.S.C. § 1051 *et seq.*  This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 exclusive of interest and costs, and because this matter is between citizens of different States.  Further, this Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a), as the Ohio statutory and common law claims are so related to the claims within this Court's original jurisdiction that they form part of the same case or controversy.

4.      Venue is appropriate in this district under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the Complaint occurred here or, alternatively, because AMC may be found in this district.  Additionally, AMC has consented to venue in this district.

## FACTS COMMON TO THE TRADEMARK COUNTS

5.      OSB is the 17th largest thrift institution in the U.S. with 56 branches, and assets of $16 billion.

6.      Since at least 1989, OSB has used the **AMTRUST** trademark in connection with its provision of retail banking services and in commerce throughout the U.S., including directly or physically in 18 states and through nationwide telephone and Internet banking.

7.      OSB has established state registration rights to the **AMTRUST** mark in Florida and Arizona for the provision of similar services.

8.      OSB also currently owns the federally registered mark **AMTRUST®**, Registration No. 1,462,208 (registered October 20, 1987), for "retail banking services provided to the general public."

9.      The trademark **AMTRUST®** has enjoyed a powerful and respected reputation.

2

In fact, after over 20 years of use, AMTRUST® is a popular, well-known, and trusted brand to consumers and competitors alike. In U.S. banking, investing, insurance, and lending channels of trade, the AMTRUST® trademark is used in commerce in connection with a panoply of services, including: retail banking services, mortgage banking services, commercial banking services, telephone and internet banking services, automobile financing, insurance agency, securities brokerage, residential land acquisition, development and construction lending, private equity investment, and financial services.

10. OSB's trademarks, trademark registrations, and/or applications for the mark AMTRUST give it rights of use dating back to 1985. OSB further owns and uses as trademarks in connection with the services described above a large family of AMTRUST domain names. (Hereinafter, these trademarks shall collectively be referred to as the "AMTRUST Trademarks.") The AMTRUST Trademarks are in full force and effect and have not been abandoned. OSB therefore has the *prima facie* exclusive prior right to use the trademark AMTRUST® or any variants or derivations thereof in the U.S. in connection with services related to its registered services, and in connection with its associated marketing and promotional activities, such as Internet domain names.

11. In an effort to promote the services provided under the famous and well known trademark AMTRUST®, OSB has engaged in extensive use, marketing, and commercial promotion of the AMTRUST Trademarks not only in connection with the registered and applied-for services described above, but also in advertising and media campaigns, including: printed matter such as publications, brochures, catalogs, price sheets, specification sheets, and invoices; newspaper advertising, yellow pages advertising, television advertising; sponsorship of events; billboards; the Internet; and word of mouth. OSB has spent approximately $1.8 million

3

in advertising and marketing the **AMTRUST Trademarks** during the past year, and has spent equally significant sums in prior years. OSB estimates that it has spent in excess of $15 million in advertising the **AMTRUST Trademarks** and services during the past 15 years.

12.     OSB, through its trade name AmTrust Bank, has a significant presence on the Internet. AmTrust Bank's official Internet web site is located at **WWW.AMTRUST.COM.**

13.     A single common thread through OSB's activities under its trade name AmTrust Bank is the word, trademark, and brand name **AMTRUST. AMTRUST®** is associated with everything OSB does through its trade name AmTrust Bank. The **AMTRUST®** term and name is synonymous in the mind of the general public with OSB due to the strong reputation gained as a result of the quality of the services provided by OSB through its trade name AmTrust Bank. Through its ongoing, extensive, and costly national activities and use in commerce, OSB has created enormous monetary value, reputation, notoriety, and goodwill in the **AMTRUST Trademarks.** The **AMTRUST Trademarks** are distinctive symbols of the high quality reputation and goodwill of OSB, and have become famous and well-known trademarks through extensive use.

14.     Upon information and belief, AMC began using in interstate commerce the mark **AMTRUST MORTGAGE** in 1994 in connection with the provision of residential mortgage lending services. AMC does business through its presence on the Internet, and its official Internet web site is located at **AMTRUST.ORG.**

15.     AMC has previously acknowledged OSB has trademark rights for the mark **AMTRUST** in the State of Florida and informed OSB that it would no longer advertise or post signs in the State of Florida under the name Amtrust.

16.     AMC is currently doing business in the State of Florida as Amtrust.

4

17.     On or around December 15, 2005, AMC filed a Petition to Cancel OSB's trademark **AMTRUST®**, Registration No. 1,462,208, in the United States Patent and Trademark Office.

18.     On or around December 16, 2005, AMC filed a concurrent use application in the United States Patent and Trademark Office to register the mark **AMTRUST MORTGAGE CORPORATION**.

**FACTS COMMON TO THE CONTRACT COUNTS**

19.     OSB and AMC entered into a Master Correspondent Loan Purchase Agreement ("the Agreement") as of August 1, 1998.  (A copy of the Agreement is attached to the Complaint as Exhibit A.)

20.     In order to induce OSB to purchase mortgage loans from AMC, the latter made certain written representations and warranties contained in the Agreement, upon which OSB relied in entering into same and which were material to each of the loan transactions referenced hereinafter.

21.     Said written representations and warranties were false in material respects, including without limitation those contained in §§5.1(a), (h), (l), (m), and (p); 5.2(k); 6.1; 7.6; 7.12; and 7.17 of Exhibit A, as described hereinafter.

**COUNT I**
**(Trademark Infringement – 15 U.S.C. § 1114(1))**

22.     OSB realleges and incorporates herein by reference the previous allegations stated in paragraphs 1 through 18 of its Complaint.

23.     **AMTRUST®**, U.S. Reg. No. 1,462,208, is a federally registered trademark.

24.     AMC's use of the mark **AMTRUST MORTGAGE** and **AMTRUST.ORG** constitutes the use in commerce of a colorable imitation, i.e., an infringement, of the registered

5

AMTRUST® trademark and is likely to cause confusion, mistake or deception of the purchasing public as to the source or origin of AMC's products or services.

25.     OSB has not consented to AMC's use of a colorable imitation of **AMTRUST®**, and AMC at all relevant times had constructive and actual notice that OSB was the prior owner and senior user of the **AMTRUST®** trademark.

26.     AMC's use of colorable imitations of **AMTRUST®**, such as the designations **AMTRUST MORTGAGE** and **AMTRUST.ORG**, was undertaken willfully and with the intent to confuse and deceive the public, and to divert sales from OSB.

27.     Accordingly, OSB has been and continues to be damaged by AMC's conduct in an amount not yet ascertained, AMC's conduct is in violation of 15 U.S.C. § 1114(1), and OSB is entitled to the remedies provided in 15 U.S.C. § 1116 *et seq.*

### COUNT II
### (Unfair Competition – 15 U.S.C. § 1125(a))

28.     OSB realleges and incorporates herein by reference the previous allegations stated in paragraphs 1 through 18 of its Complaint.

29.     As set forth above, in relation to the alleged rights of AMC, OSB is the owner and senior user of the **AMTRUST Trademarks.**

30.     The **AMTRUST Trademarks** have become uniquely associated with OSB and hence identify OSB as the source of services bearing the same.  AMC's use in commerce of the designations **AMTRUST MORTGAGE** and **AMTRUST.ORG** is confusingly similar to and likely to cause confusion with the **AMTRUST Trademarks.**    AMC's use, commercial advertising, and promotion in commerce of the designations **AMTRUST MORTGAGE** and **AMTRUST.ORG** constitute passing off, unfair competition, and a false designation of origin, and wrongfully and falsely designates AMC's services as originating from, or being sponsored

6

by, affiliated with, or connected with OSB. Such conduct by AMC is likely to cause confusion, mistake, or deception of the purchasing public, as to the nature, source, or origin of AMC's services, and to cause the purchasing public to believe wrongly that AMC's services are otherwise associated with OSB.

31.     Upon information and belief, said conduct by AMC was undertaken willfully with the intent to confuse and deceive the public, and to divert sales from OSB.

32.     Accordingly, OSB has been and continues to be damaged by AMC's conduct in an amount not yet ascertained, AMC's conduct is unlawful in violation of 15 U.S.C. § 1125(a), and OSB is entitled to the remedies provided in 15 U.S.C. § 1116 *et seq.*

## COUNT III
### (Trademark Dilution – 15 U.S.C. § 1125(c))

33.     OSB realleges and incorporates herein by reference the previous allegations stated in paragraphs 1 through 18 of its Complaint.

34.     As set forth above, in relation to the alleged rights of AMC, OSB is the owner and senior user of the **AMTRUST Trademarks.**

35.     The **AMTRUST Trademarks** are distinctive, unique, valuable, well-known, and famous. AMC's conduct as described herein above is likely to injure the reputation enjoyed by the **AMTRUST Trademarks.**

36.     AMC's conduct as described herein above has diluted the distinctive quality, fame, reputation, and value associated with the **AMTRUST Trademarks,** and/or has otherwise tarnished the image of the **AMTRUST Trademarks.**

37.     Upon information and belief, said conduct by AMC was undertaken willfully with the intent to trade on the reputation and good will of OSB and to cause dilution of the famous **AMTRUST Trademarks.**

38.     Accordingly, OSB has been and continues to be damaged by AMC's conduct in an amount not yet ascertained, AMC's conduct is unlawful in violation of 15 U.S.C. § 1125(a), and OSB is entitled to the remedies provided for in 15 U.S.C. §§ 1117(a), 1118. and 1125(c).

**COUNT IV**
**(Cybersquatting – 15 U.S.C. § 1125(d))**

39.     OSB realleges and incorporates herein by reference the previous allegations stated in paragraphs 1 through 18 of its Complaint.

40.     As set forth above, OSB is the owner and senior user of the **AMTRUST Trademarks.**

41.     The **AMTRUST Trademarks** are distinctive and famous and have become uniquely associated with OSB and hence identify OSB as the source of goods or services bearing the same.

42.     AMC has registered and uses in commerce the domain name **AMTRUST.ORG** without regard to the services of OSB.  The domain name **AMTRUST.ORG** is identical to or confusingly similar to the **AMTRUST Trademarks,** including **WWW.AMTRUST.COM.**

43.     AMC's registration and use of the domain name **AMTRUST.ORG** constitutes a bad faith intent by AMC to profit from the **AMTRUST Trademarks,** and to register, traffic in, and use a domain name that is identical to or confusingly similar to the **AMTRUST Trademarks,** which were already distinctive as of the time of such domain name registration by AMC, and constitutes a bad faith intent by AMC to register, traffic in, and use a domain name that dilutes the **AMTRUST Trademarks,** which were already famous as of the time of such domain name registration by AMC.

44.     Upon information and belief, said conduct by AMC was undertaken willfully, with the bad faith intent of attracting customers of OSB and diverting those customers away

8

from OSB's official Internet web site to the Internet web site accessible under the domain name owned or controlled by AMC, and to create a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of AMC's site, all for AMC's own profit, advantage, benefit, and commercial gain.

45.     Accordingly, OSB has been and continues to be damaged in an amount not yet ascertained. AMC's conduct is unlawful in violation of 15 U.S.C. § 1125(d), and OSB is entitled to the remedies provided for in 15 U.S.C. § 1116(a) and/or § 1117(d).

**COUNT V**
**(Violation of Ohio's Deceptive Trade Practices Act –**
**Ohio Revised Code Chapter 4165)**

46.     OSB realleges and incorporates herein by reference the previous allegations stated in paragraphs 1 through 18 of its Complaint.

47.     AMC's conduct as alleged above has the capacity to deceive the public, and constitutes unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of a business, vocation, or occupation in Ohio.

48.     As a direct and proximate result of AMC's conduct, OSB and the public have been and continue to be damaged.

49.     Upon information and belief, AMC's conduct as described herein above was undertaken willfully by AMC.

50.     Accordingly, AMC's conduct violates Ohio Rev. Code §§ 4165.02(A)(1)-(3) and (7), OSB has been damaged in an amount not yet ascertained, and OSB is entitled to injunctive relief and to the remedies provided for under Ohio Rev. Code Ch. 4165, including attorneys' fees.

9

## COUNT VI
### (Declaratory Judgment)

51.     OSB realleges and incorporates herein by reference the previous allegations stated in paragraphs 1 through 18 of its Complaint.

52.     On or around December 15, 2005, AMC filed a Petition to Cancel OSB's trademark **AMTRUST®**, Registration No. 1,462,208, in the United States Patent and Trademark Office ("the Petition"). (A copy of the Petition is attached to the Complaint as Exhibit B.) On or around December 16, 2005, AMC also filed an application to register the mark **AMTRUST MORTGAGE CORPORATION.** OSB denies the material allegations in the Petition regarding the invalidity of its trademark **AMTRUST®**, Registration No. 1,462,208. and denies that AMC is entitled to concurrent use of the trademark **AMTRUST®**.

53.     As a result of the Petition, an actual controversy exists between OSB and AMC regarding the validity and rights to exclusive use of OSB's trademark **AMTRUST®**, Registration No. 1,462,208.

54.     Pursuant to 15 U.S.C. § 1119 and 28 U.S.C. § 2201, OSB requests a declaration from this Court regarding the validity and rights to exclusive use of OSB's trademark **AMTRUST®**, Registration No. 1,462,208.

## COUNT VII
### (Breach of Contract – Vincent Frias Loan No. 1436986)

55.     OSB realleges and incorporates herein by reference the previous allegations stated in paragraphs 19 through 21 of its Complaint.

56.     On or about May 20, 2004, AMC registered with OSB a mortgage loan and later requested funding for this mortgage loan in the principal amount of $260,100 made to Vincent Frias and secured by a mortgage on 795 Hammond Drive NE 401, Atlanta, Georgia  30328.

10

57.    Pursuant to the terms and conditions of the Agreement and in reliance on AMC's representations and warranties contained therein, OSB funded the Frias Loan No. 1436986.

58.    The Frias Loan No. 1436986 was misrepresented to OSB and violated the terms and conditions of the Agreement, including without limitation §§5.1(a), (h). and (p); 5.2(k); and 7.12 as follows:

    a.    Documentation required for this loan is missing. The loan file fails to contain evidence of six months rent loss insurance that is required. Further, OSB's policies and procedures require an approved underwriting exception to appear in the file when a borrower applies for five or more loans with OSB. In this case, the borrower did apply for five or more loans with OSB, but the required underwriting exception does not appear in the file.

59.    Pursuant to §6.1 of the Agreement, OSB notified AMC of these violations, but AMC failed and refused to repurchase the Frias Loan No. 1436986. further breaching the Agreement.

60.    AMC's representation that it would repurchase the Frias Loan No. 1436986 in accordance with §6.1 of the Agreement was false.

61.    In §§6.1, 7.6, and 7.17 of the Agreement. AMC further agreed to indemnify OSB against legal fees and related costs resulting from AMC's breach of the representations and warranties in the Agreement, including but not limited to those set forth herein, and AMC's acts or omissions in originating the Frias Loan No. 1436986 on which OSB relied to its direct detriment.

62.    AMC's breach of its representations and warranties and its failure to comply with the remedial provisions of the Agreement caused and continues to cause OSB injury.

### COUNT VIII
### (Breach of Contract – Vincent Frias Loan No. 1438345)

63.    OSB realleges and incorporates herein by reference the previous allegations stated

in paragraphs 19 through 21 of its Complaint.

64.     On or about May 20, 2004, AMC registered with OSB a mortgage loan and later requested funding for this mortgage loan in the principal amount of $239,400 made to Vincent Frias and secured by a mortgage on 795 Hammond Drive NE 708, Atlanta, Georgia 30328.

65.     Pursuant to the terms and conditions of the Agreement and in reliance on AMC's representations and warranties contained therein, OSB funded the Frias Loan No. 1438345.

66.     The Frias Loan No. 1438345 was misrepresented to OSB and violated the terms and conditions of the Agreement, including without limitation §§5.1(a), (h), and (p); 5.2(k); and 7.12 as follows:

> a.     Documentation required for this loan is missing. The loan file fails to contain evidence of six months rent loss insurance that is required. Further, OSB's policies and procedures require an approved underwriting exception to appear in the file when a borrower applies for five or more loans with OSB. In this case, the borrower did apply for five or more loans with OSB, but the required underwriting exception does not appear in the file.

67.     Pursuant to §6.1 of the Agreement, OSB notified AMC of these violations, but AMC failed and refused to repurchase the Frias Loan No. 1438345, further breaching the Agreement.

68.     AMC's representation that it would repurchase the Frias Loan No. 1438345 in accordance with §6.1 of the Agreement was false.

69.     In §§6.1, 7.6, and 7.17 of the Agreement, AMC further agreed to indemnify OSB against legal fees and related costs resulting from AMC's breach of the representations and warranties in the Agreement, including but not limited to those set forth herein, and AMC's acts or omissions in originating the Frias Loan No. 1438345 on which OSB relied to its direct detriment.

12

70. AMC's breach of its representations and warranties and its failure to comply with the remedial provisions of the Agreement caused and continues to cause OSB injury.

## COUNT IX
### (Breach of Contract – Vincent Frias Loan No. 7667818)

71. OSB realleges and incorporates herein by reference the previous allegations stated in paragraphs 19 through 21 of its Complaint.

72. On or about February 10, 2004, AMC registered with OSB a mortgage loan and later requested funding for this mortgage loan in the principal amount of $207,000 made to Vincent Frias and secured by a mortgage on 5901 Highway 20, Cartersville, Georgia 30121.

73. Pursuant to the terms and conditions of the Agreement and in reliance on AMC's representations and warranties contained therein, OSB funded the Frias Loan No. 7667818.

74. The Frias Loan No. 7667818 was misrepresented to OSB and violated the terms and conditions of the Agreement, including without limitations §§5.1(a), (h), and (p); 5.2(k); and 7.12 as follows:

  a. The loan file fails to contain evidence of six months rent loss insurance that is required, and it fails to contain a complete HUD-1 Settlement Statement. Thus, documentation required for this particular loan is missing.

75. Pursuant to §6.1 of the Agreement, OSB notified AMC of these violations, but AMC failed and refused to repurchase the Frias Loan No. 7667818, further breaching the Agreement.

76. AMC's representation that it would repurchase the Frias Loan No. 7667818 in accordance with §6.1 of the Agreement was false.

77. In §§6.1, 7.6, and 7.17 of the Agreement, AMC further agreed to indemnify OSB against legal fees and related costs resulting from AMC's breach of the representations and

13

warranties in the Agreement, including but not limited to those set forth herein, and AMC's acts or omissions in originating the Frias Loan No. 7667818 on which OSB relied to its direct detriment.

78.     AMC's breach of its representations and warranties and its failure to comply with the remedial provisions of the Agreement caused and continues to cause OSB injury.

**COUNT X**
**(Breach of Contract – Vincent Frias Loan No. 2026570)**

79.     OSB realleges and incorporates herein by reference the previous allegations stated in paragraphs 19 through 21 of its Complaint.

80.     On or about August 18, 2004, AMC registered with OSB a mortgage loan and later requested funding for this mortgage loan in the principal amount of S297,900 made to Vincent Frias and secured by a mortgage on 795 Hammond Drive NE 207, Atlanta, Georgia 30328.

81.     Pursuant to the terms and conditions of the Agreement and in reliance on AMC's representations and warranties contained therein, OSB funded the Frias Loan No. 2026570.

82.     The Frias Loan No. 2026570 was misrepresented to OSB and violated the terms and conditions of the Agreement, including without limitation §§5.1(a), (h), (m), and (p); 5.2(k); and 7.12 as follows:

      a.      OSB's policies and procedures requires an approved underwriting exception to appear in the file when a borrower applies for five or more loans with OSB. In this case, the borrower did apply for five or more loans with OSB, but the required underwriting exception does not appear in the file.

      b.      The property's appraised value is not supported. The appraiser used two property sales to the same borrower as comparable sales in determining the residence's value, and these were unreliable and/or inaccurate. The appraiser did not disclose these sales. Thus, this circumstance adversely affected the validity of the appraisal, which was not done in accordance

14

90.     The Frias Loan No. 7265498 was misrepresented to OSB and violated the terms and conditions of the Agreement, including without limitation §§5.1(a), (h), and (p); 5.2(k); and 7.12 as follows:

        a.     OSB's policies and procedures require an approved underwriting exception to appear in the file when a borrower applies for five or more loans with OSB. In this case, the borrower did apply for five or more loans with OSB, but the required underwriting exception does not appear in the file.

91.     Pursuant to §6.1 of the Agreement, OSB notified AMC of these violations, but AMC failed and refused to repurchase the Frias Loan No. 7265498. further breaching the Agreement.

92.     AMC's representation that it would repurchase the Frias Loan No. 7265498 in accordance with §6.1 of the Agreement was false.

93.     In §§6.1, 7.6, and 7.17 of the Agreement, AMC further agreed to indemnify OSB against legal fees and related costs resulting from AMC's breach of the representations and warranties in the Agreement, including but not limited to those set forth herein. and AMC's acts or omissions in originating the Frias Loan No. 7265498 on which OSB relied to its direct detriment.

94.     AMC's breach of its representations and warranties and its failure to comply with the remedial provisions of the Agreement caused and continues to cause OSB injury.

## COUNT XII
### (Breach of Contract – Vincent Frias Loan No. 1264469)

95.     OSB realleges and incorporates herein by reference the previous allegations stated in paragraphs 19 through 21 of its Complaint.

96.     On or about April 27, 2004, AMC registered with OSB a mortgage loan and later requested funding for this mortgage loan in the principal amount of $333.700 made to Vincent

Frias and secured by a mortgage on 12 McKelvey Court, Cartersville, Georgia 30121.

97.    Pursuant to the terms and conditions of the Agreement and in reliance on AMC's representations and warranties contained therein, OSB funded the Frias Loan No. 1264469.

98.    The Frias Loan No. 1264469 was misrepresented to OSB and violated the terms and conditions of the Agreement, including without limitation §§5.1(a), (h), and (p); 5.2(k); and 7.12 as follows:

> a.    Documentation required for this loan is missing. The loan file fails to contain evidence of six months rent loss insurance that is required. Further, OSB's policies and procedures require an approved underwriting exception to appear in the file when a borrower applies for five or more loans with OSB. In this case, the borrower did apply for five or more loans with OSB, but the required underwriting exception does not appear in the file.

99.    Pursuant to §6.1 of the Agreement, OSB notified AMC of these violations, but AMC failed and refused to repurchase the Frias Loan No. 1264469, further breaching the Agreement.

100.    AMC's representation that it would repurchase the Frias Loan No. 1264469 in accordance with §6.1 of the Agreement was false.

101.    In §§6.1, 7.6, and 7.17 of the Agreement, AMC further agreed to indemnify OSB against legal fees and related costs resulting from AMC's breach of the representations and warranties in the Agreement, including but not limited to those set forth herein, and AMC's acts or omissions in originating the Frias Loan No. 1264469 on which OSB relied to its direct detriment.

102.    AMC's breach of its representations and warranties and its failure to comply with the remedial provisions of the Agreement caused and continues to cause OSB injury.

## COUNT XIII
## (Breach of Contract – Vincent Frias Loan No. 1438402)

103.    OSB realleges and incorporates herein by reference the previous allegations stated in paragraphs 19 through 21 of its Complaint.

104.    On or about May 20, 2004, AMC registered with OSB a mortgage loan and later requested funding for this mortgage loan in the principal amount of $233,900 made to Vincent Frias and secured by a mortgage on 795 Hammond Drive NE 408, Atlanta, Georgia 30328.

105.    Pursuant to the terms and conditions of the Agreement and in reliance on AMC's representations and warranties contained therein, OSB funded the Frias Loan No. 1438402.

106.    The Frias Loan No. 1438402 was misrepresented to OSB and violated the terms and conditions of the Agreement, including without limitation §§5.1(a), (h), (m), and (p); and 7.12 as follows:

        a.    OSB's policies and procedures require an approved underwriting exception to appear in the file when a borrower applies for five or more loans with OSB. In this case, the borrower did apply for five or more loans with OSB, but the required underwriting exception does not appear in the file.

        b.    The property's appraised value is not supported. The appraiser used two property sales to the same borrower as comparable sales in determining the residence's value, and these were unreliable and/or inaccurate. The appraiser did not disclose these sales. Thus, this circumstance adversely affected the validity of the appraisal, which was not done in accordance with applicable professional standards or with OTS, FNMA, or FHLMC guidelines as required by the Agreement.

107.    Pursuant to §6.1 of the Agreement, OSB notified AMC of these violations, but AMC failed and refused to repurchase the Frias Loan No. 1438402, further breaching the Agreement.

108.    AMC's representation that it would repurchase the Frias Loan No. 1438402 in accordance with §6.1 of the Agreement was false.

109.     In §§6.1, 7.6, and 7.17 of the Agreement, AMC further agreed to indemnify OSB against legal fees and related costs resulting from AMC's breach of the representations and warranties in the Agreement, including but not limited to those set forth herein, and AMC's acts or omissions in originating the Frias Loan No. 1438402 on which OSB relied to its direct detriment.

110.     AMC's breach of its representations and warranties and its failure to comply with the remedial provisions of the Agreement caused and continues to cause OSB injury.

111.     Attached hereto and made a part hereof as collective Exhibit C are copies of separate repurchase letters dated January 7, 2005, from OSB addressed to AMC.  The latter has failed and refused to comply with OSB's repurchase demands.

### COUNT XIV
### (Breach of Contract – Rachel Weatherby Loan No. 7429094)

112.     OSB realleges and incorporates herein by reference the previous allegations stated in paragraphs 19 through 21 of its Complaint.

113.     On or about January 6, 2004, AMC registered with OSB a mortgage loan and later requested funding for this mortgage loan in the principal amount of $280,800 made to Rachel S. Weatherby and secured by a mortgage on 795 Hammond Drive 707, Atlanta, Georgia  30328.

114.     Pursuant to the terms and conditions of the Agreement and in reliance on AMC's representations and warranties contained therein, OSB funded the Weatherby Loan No. 7429094.

115.     The Weatherby Loan No. 7429094 was misrepresented to OSB and violated the terms and conditions of the Agreement, including without limitation §§5.1(a), (h), and (p); 5.2(k); and 7.12 as follows:

      a.      This loan transaction involves an occupancy misrepresentation wherein the borrower indicated she lived at one address when, in reality, she did not.

19

      b.     OSB's loan program for this particular loan requires a verification of the borrower's employment by telephone, but such verification was not provided.

      c.     OSB's loan program for this particular loan does not permit open charge-offs on the borrower's credit report, but this particular borrower's credit report showed such a charge-off.

116.    Pursuant to §6.1 of the Agreement, OSB notified AMC of these violations, but AMC failed and refused to repurchase the Weatherby loan, further breaching the Agreement.

117.    AMC's representation that it would repurchase the Weatherby loan in accordance with §6.1 of the Agreement was false.

118.    In §§6.1, 7.6, and 7.17 of the Agreement, AMC further agreed to indemnify OSB against legal fees and related costs resulting from AMC's breach of the representations and warranties in the Agreement, including but not limited to those set forth herein, and AMC's acts or omissions in originating the Weatherby loan on which OSB relied to its direct detriment.

119.    AMC's breach of its representations and warranties and its failure to comply with the remedial provisions of the Agreement caused and continues to cause OSB injury.

## COUNT XV
### (Breach of Contract – Janice Corvin Loan No. 1343356)

120.    OSB realleges and incorporates herein by reference the previous allegations stated in paragraphs 19 through 21 of its Complaint.

121.    On or about September 27, 2005, Fannie Mae, OSB's investor, demanded that OSB make it whole for the Corvin Loan No. 1343356 that AMC had originally sold to OSB, and that OSB had subsequently sold to Fannie Mae based on AMC's representations and warranties.

122.    Promptly thereafter on January 9, 2006, OSB notified AMC of the make whole demand presented to OSB by Fannie Mae. A copy of OSB's notification addressed to AMC is attached hereto and made a part hereof as Exhibit D. In this notification. OSB informed AMC

that the basis for the make whole demand was an unacceptable appraisal. The comparable sales data appearing on the original appraisal could not be verified. An improper appraisal technique was used; origination comparables were created by combining the vacant land sales of the comparables with pending contract purchase prices for manufactured homes to be placed on the vacant land. All of these appraisal flaws violated §§5.1(m) and (p) and 5.2(k) of the Agreement.

123.    AMC has failed and refused to comply with OSB's make whole demand set forth in Exhibit D and to indemnify OSB for its loss on account of its having made Fannie Mae whole pursuant to OSB's own representations and warranties.

COUNT XVI<br>(Breach of Contract – Pamela Wrather Loan No. 5416697)

124.    OSB realleges and incorporates herein by reference the previous allegations stated in paragraphs 19 through 21 of its Complaint.

125.    On or about October 31, 2005, Fannie Mae, OSB's investor, demanded that OSB repurchase the Wrather Loan No. 5416697 that AMC had originally sold to OSB by AMC, and that OSB had subsequently sold to Fannie Mae based on AMC's representations and warranties.

126.    Promptly thereafter on January 9, 2006, OSB notified AMC of the repurchase demand presented to OSB by Fannie Mae. A copy of OSB's notification addressed to AMC is attached hereto and made a part hereof as Exhibit E. In this notification, OSB informed AMC that the basis for the repurchase demand was an unacceptable appraisal. The data sources cited in the original appraisal were inadequate to verify the comparable sales. It appears the original appraisal was inflated, thus making this loan ineligible for sale to Fannie Mae because the loan-to-value ratio was 107%, outside the guidelines of Fannie Mae. All of these appraisal flaws violated §§5.1(m) and (p) and 5.2(k) of the Agreement.

127.    AMC has failed and refused to comply with OSB's repurchase demand set forth

21

in Exhibit E and to indemnify OSB for its loss on account of its having made Fannie Mae whole

pursuant to OSB's own representations and warranties.

### COUNT XVII
### (Contractual Indemnity)

128.    OSB realleges and incorporates herein by reference the previous allegations stated

in paragraphs 19 through 21 of its Complaint.

129.    The Agreement provides:

6.1  Repurchase.

(a)  Upon * * * (ii) discovery by Purchaser of a breach of any of the
representations and warranties contained in Article V, * * *, then, within
sixty (60) days after the earlier of its discovery or its receipt of notice of
any such event or occurrence, Correspondent shall repurchase said
Mortgage Loan at a price equal to the higher of the purchase price or
100% of par, with adjustments for accrued interest, prepayments and any
comparable items at the time of repurchase, plus attorney's fees, legal
expenses, court costs or other expenses that may have been incurred by
Purchaser in connection with the Mortgage Loan.

(b)  Upon a breach of any representation or warranty contained in
Section 5.1 or 5.2 which materially and adversely affects the value of all
the Mortgage Loans sold by Correspondent taken as a whole, at
Purchaser's option, Correspondent shall repurchase all of such Mortgage
Loans at the times and prices as provided in Section 6.1 (a) above.

*See* §6.1(a) and (b) of the Agreement.

130.    The Agreement further states:

7.6  Correspondent shall indemnify and hold harmless Purchaser, its Directors,
officers, agents and employees, from and against any and all losses,
damages, penalties, fines, forfeitures, legal fees and related costs,
judgments and other costs and expenses resulting from any claim, demand,
defense or assertion based on or grounded upon, or resulting from, (a) a
breach of any representation or warranty of Correspondent contained in
this Agreement or (b) any act or omission of Correspondent or any of its
partners, directors, members, shareholders, officers, agents or employees
in originating or servicing any Mortgage Loan, including, without
limitation, incomplete or erroneous loan documentation, fraud by
Correspondent in the origination of the Mortgage Loan, improper escrow
disbursements or misapplied payments or claims not covered by insurance,

or violation of applicable law or regulation.

*See* §7.6 of the Agreement.

      131.    Additionally, the Agreement states:

            7.17    If any judicial action is commenced to enforce this Agreement, the prevailing party in such action shall be entitled to recover its costs and expenses, including reasonable attorneys' fees.

*See* §7.17 of the Agreement.

      132.    OSB has incurred, and continues to incur, significant legal fees and other expenses that are recoverable under the Agreement and for which AMC is liable to OSB.

      WHEREFORE, Plaintiff Ohio Savings Bank, d/b/a Amtrust Bank prays for relief as follows against Defendant Amtrust Mortgage Corporation:

      A.    For injunctive relief preventing Defendant, its officers, directors, owners, agents, servants, employees, attorneys, representatives, successors and assigns, and all persons, firms or corporations acting in active concert or participation with them, from any use or registration whatsoever (including use in or with web sites or domain names) of the word **AMTRUST** in connection with banking, financial, or mortgage-related services.

      B.    For a declaration, certified by this Court to the Commissioner of Patents and Trademarks, that Registration No. 1,462,208 is valid and that Plaintiff has exclusive rights to use the trademark **AMTRUST®**.

      C.    For an order instructing Defendant and its officers, employees, agents, directors and owners to transfer ownership of the domain name **AMTRUST.ORG** to Plaintiff.

      D.    For an award of profits accruing to Defendant and damages sustained by Plaintiff as a result of Defendant's unlawful conduct relating to Counts I-VI.

      E.    For an award, where applicable and allowable by law, of treble damages,

exemplary or punitive damages, and attorneys' fees and allowable costs arising from Counts I-VI.

  F.  For an award, upon the pretrial election of Plaintiff, of statutory damages.

  G.  For a determination that the defendant is not entitled to concurrent use of the word AMTRUST, including but not limited to the use of AMTRUST MORTGAGE CORPORATION.

  H.  For an award of prejudgment interest.

  I.  For an injunction ordering Defendant to repurchase certain loans from Plaintiff for their present loan balance, plus all interest accruing to the date of repurchase, premiums and fees paid to Defendant, other expenses required to be paid by §6.1 of the Agreement, Plaintiff's attorney's fees, and costs, all of which will be proven at trial.

  J.  For judgment against Defendant in favor of Plaintiff for compensatory damages for all losses and injuries suffered by Plaintiff relating to the Agreement and/or referenced loans in an amount in excess of $75,000.

  K.  For judgment against Defendant in favor of Plaintiff that Defendant indemnify Plaintiff with respect to losses arising from certain mortgage loans about which Plaintiff previously notified Defendant, but which Defendant simply ignored; and

  L.  Any other relief this Court deems just and equitable.

Respectfully submitted,

HARRY D. CORNETT, JR. (0013179)
LARRY B. DONOVAN (0070829)
TARIQ M. NAEEM (0072808)
Tucker Ellis & West LLP
1150 Huntington Building
925 Euclid Avenue
Cleveland, OH 44115-1414
Telephone:  216.592.5000
Telefax:  216.592.5009
Email:  harry.cornett@tuckerellis.com
         larry.donovan@tuckerellis.com
         tariq.naeem@tuckerellis.com

STEPHEN V. CHEATHAM (0011484)
ROY E. LACHMAN (0010389)
200 Ohio Savings Plaza
1801 East Ninth St.
Cleveland, Ohio  44114
Telephone:  216.588-5945 or
            216.588-4363
Telefax:  216.696-5131
Email:  scheatham@ohiosavings.com
        rlachman@ohiosavings.com

Attorneys for Plaintiff
Ohio Savings Bank, d/b/a Amtrust Bank

25

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Ohio Savings

Bank, d/b/a AmTrust Bank requests a trial by jury on all claims so triable.

Respectfully submitted,

HARRY D. CORNETT, JR. (0013179)
LARRY B. DONOVAN (0070829)
TARIQ M. NAEEM (0072808)
Tucker Ellis & West LLP
1150 Huntington Building
925 Euclid Avenue
Cleveland, OH 44115-1414
Telephone:     216.592.5000
Telefax:       216.592.5009
Email:         harry.cornett@tuckerellis.com
               larry.donovan@tuckerellis.com
               tariq.naeem@tuckerellis.com

STEPHEN V. CHEATHAM (0011484)
ROY E. LACHMAN (0010389)
200 Ohio Savings Plaza
1801 East Ninth St.
Cleveland, Ohio 44114
Telephone:     216.588-5945 or
               216.588-4363
Telefax:       216.696-5131
Email:         scheatham@ohiosavings.com
               rlachman@ohiosavings.com

Attorneys for Plaintiff
Ohio Savings Bank, d/b/a Amtrust Bank

26